Case number 10-2775. Jack Rodriguez v. Department of Financial & Professional Regulations You know, it's easier for us if you take the ampoule table. It's easier for me. Thank you. Yes. Counsel, good morning. Good morning, Your Honors. I'm Stephen Roth. I am counsel for the plaintiff, Dr. Jack Rodriguez. There are essentially two issues to our appeal based on two different counts. The first deals with Dr. Rodriguez's petition for attorney's fees and litigation expenses pursuant to Section 10-55C of the Administrative Procedure Act. In order to qualify for fees, one has to invalidate an administrative rule or any rule actually on any basis. We believe there's no dispute that that happened. We have an order from the circuit court that's a final decision rendered in 2005 that specifically states that there is a conflict between the rules-enabling statute and Section 10-55C. Why wasn't your pre-petition brought as part of that case? Because it would have been unripe, Your Honor. Why would it have been unripe? In order to seek attorney's fees or litigation expenses pursuant to Section 10-55C, one has to have invalidated an administrative rule or other rule. At the time that was brought, there had been no rule invalidated. So it would have been, in essence- When was it invalidated? It was invalidated by the court in 2005. What court? Circuit court, yes. And it issues its order, its ruling, and the court retains jurisdiction for- 30 days. 30 days. Correct. And why wasn't, as Justice Cahill asked, why wasn't the petition filed within those first 30 days? Because, first of all, I received a phone call from opposing counsel who said he's going to seek reconsideration. That never happened. I'm sorry? It did happen, but it was untimely. And then they went in on a 2-1401, which eventually was reversed and reint- What about the filing of the 2-1401 would certainly have indicated that the rule had been invalidated? You'd been the successful party? Mm-hmm. But there's no time limit. As the Supreme Court held in Citizens- What do you mean there's no time limit? Well, there's no time limit. To bring a separate action, as you did? It's a separate action. It's an independent action. And in addition, we had the right to bring it at any later time without limitation under Section 701C of the Declaratory Judgment Act. This Court has held in Universal, Pacemaker, DeGicis, that there's no time limit for seeking supplemental relief. That was one basis we had, and we've always had for having waited. The only two situations where one has to bring such a cause within 30 days is where you're basing it on a prevailing party clause based on contract. And the other would be under Section 137, where one is seeking sanctions. The courts have made that clear. You weren't seeking sanctions? We weren't seeking sanctions, and we weren't- So 137 isn't an issue? Correct. But there were cases that were cited arguing that we had to bring it within 30 days on that basis. And my point is that doesn't apply because it wasn't a sanctions issue. It also was not based on a contractual clause, and we weren't having the contract constituted seeking attorney's fees based on that. So there's a whole line of cases that say, first of all, it's an independent cause of action. The Supreme Court said that in Citizens, and therefore we have the right to bring it essentially at any time after that because it's collateral. We cited about eight or nine cases on that survey. It was one of them. Libertyville was another. We had the option to wait. And so we just decided that since we have the option to wait, let's clarify issues. And once we know where the final standing is going to be on the decision- And you would seek a separate action? And a separate action. Correct. And we have that right under Section 701C of the Declaratory Judgment Act. And as the Supreme Court said in Citizens, they could not envision any statute that would be less encumbered by restrictions than 1055C. There's no time limit stated in there. There are no restrictions whatsoever. It only says all you have to do is invalidate a rule, and you can seek fees. But we had not done that until we had the original decision, and that became final. Okay. I think we understand your position. Okay. The Department has raised a couple of defenses. First, race judicata. That ties in with what I just talked about. Right. You cannot seek fees until you've established the basis for seeking fees. And we've cited 17 cases. I believe Waller was a U.S. Supreme Court case. Lyons was another. I think Lyons is particularly on point. There was a malicious prosecution case. And they basically said, until you've satisfied the grounds for malicious prosecution, one of which is prevailing in the prior litigation, one cannot seek or one cannot bring a cause for malicious prosecution. Therefore, it cannot be the same issue. Therefore, there cannot be race judicata. We've cited about 10 or 12 First District cases along the same lines. There's no identity of issue. In addition, there were six defenses outlined by the Supreme Court in Hudson. One of them was, if it's not right, if the court would not have subject matter jurisdiction, one can bring it later. The other is where you have a statutory scheme like the Declaratory Judgment Act that specifically provides for one to bring a cause of action later, that one can do that. So we have basically three different grounds for asserting that there is no race judicata. The first and third one are probably the strongest two. First, that there's no identity of cause, because you can't have identity of cause if the operative fact in the second case did not exist at the time of the first case. So we think the law is very, very clear on that. The other argument- I wish I agreed with you about the declaratory law. Well, I don't know that you can do much better than 17, but we were able to pull those up. The other issue is whether this court or whether the circuit court had jurisdiction. We've argued that it is an independent cause of action, again, relying on citizens. And the second district case, I don't recall the name off the top of my head. We've argued that the Declaratory Judgment Act gave us the grounds to do that- You're under the Declaratory Judgment Act, but the issue of race judicata goes away, doesn't it? Right. Exactly. Exactly. So both the arguments about the jurisdiction of the court and race judicata essentially go away, because the court retains jurisdiction under 701C at any time in the future to allow a party to come in based upon the original declaration and seek supplemental relief. And in the various cases that have addressed the issue, this has been damages, injunctions, attorney's fees, all those sorts of things. So we think it's all very clear-cut. I can move on to the second issue. I don't want to belabor your time unless there are any issues. I don't think you need to move on to the second issue. I think the first issue really disposes of this case. Well, I was talking about- I mean, if you win on that, I think you're home free. Okay. I was talking about count two, which deals with the Department's administrative closure of the case. The Department- I don't-well, I mean, if you want to argue, go ahead. Well, I just wanted to point out that it's a very simple argument, that the Department has argued that there was waiver when they closed the complaint against Dr. Rodriguez administratively. Our argument is you can't have waiver or agreement or anything like that when the Department is- There are arguments also that it's the same relief that you're requesting. Well, except that- They talk about the possibility of reopening the case, but they've made representations that that's not going to happen. Well, the attorney for the Department did not. The attorney general said he didn't-a representative before the circuit court said that he did not believe it was going to happen, but he couldn't say for sure. Well, I thought they went so far as to say that the complaint was incorrectly filed against your client. Wasn't there a statement in there that- They said that they had no evidence for having prosecuted him for a number of years. Okay. So theoretically, but the point was we wanted them-we wanted to make sure that it wasn't going to come back in, and under the law they had ceded their authority in closing it that way. So we wanted essentially to exclude that possibility. The man had been through enough, and we wanted to make sure there was no possibility they were going to bring it back. And I'm happy to answer any more questions. You'll have time for a button. Thank you. Good morning, Your Honors. How are you this morning, Counsel? Good, Your Honor. Thank you, Counsel. Your Honor, I spoke to my client agency just last week. I can represent to the Court that there's no risk here that Dr. Rodriguez will be prosecuted for subjecting this patient to the- That's the easy issue. I wanted to get it out there. That's the easy issue. I think the first issue is- For a judgment action for fees. Your Honor, 1055C is the more recent statute. It's the more specific statute. The specific statutes control the general statutes. Also, I don't think there's any cases involving declaratory judgment that has implicated 1055C yet. There are. 1055C's language is clear and unambiguous. It says in any case in which an administrative rule has been invalidated, Rodriguez 3, which is this case, no court has invalidated an administrative rule. I would have been phrased to give the doctor an unlimited amount of time to file it as an independent. You wouldn't say in this case. You would say- You would say at any time a litigant seeks to attorney's fees. That kind of statute is inconceivable to me because the state has a very serious interest in understanding what its liabilities are. And I think the statute indicates that in that language that says in this case, the state needs to know whether it's on the hook for attorney's fees or not. We would have appealed, perhaps, if we had known- Or you would have paid them. I'm sorry? If they had been brought within the first 30 days after the trial court ruled, right? Yes. If the judge had said he was going to award fees, then the case would have continued, and we certainly would have appealed that. On that issue. Yes. But you might not have appealed it. You might have just paid the fees and gotten on with your life. That's possible, too. But if it occurred within the first 30 days of the trial court's decision, we wouldn't be here, would we? No. At least not on that issue. No. My opponent has said that it was impossible for him to seek fees before they had vested. That's his position. But complaints are filed all the time with the anticipation that if count one is successful, count two will require such and such and such. That could have easily been done here. That's right. There are four appellate decisions which talk about 1055C, which are in my brief. The trio of C cases, Carson, Citizens Organizing Project, and County of DuPage. All of those cases, I've called it a roadmap. I think they take exception to that language. But I think they show what is supposed to happen in a 1055C case. The trial judge who makes the decision that an administrative rule is invalid is then given an opportunity, while that case is pending, to award fees. In an unusual case, where things end up in the appellate court, and the appellate court is the court that determines some administrative rule is invalid, then the litigant still has the same opportunity. He has to ask the appellate court to award fees. It's a little strange because the appellate court typically doesn't do that. But there's at least one case, and that's the County of DuPage case, where the second district did just that, recognizing they couldn't remand in that case to the circuit court. ART is a decision that went to the appellate court twice and the Supreme Court once. That's a complicated case, but the principles are exactly the same in that case. ART was direct appeal to the appellate court, direct appeal to the Supreme Court, remand, and then direct appeal again to the appellate court. One case. The case number never changed. It was the same case. Your argument basically is that he has lost his opportunity to appeal in this case. Yes, your Honor. Well, he's lost the opportunity to seek fees. Yes. I didn't want to repeat the circuit court's very lengthy discussion about race judicata. I agree with it, but it seemed to me that it went on and on. And so I simply brought to the court's attention what I thought was the most important parts of that argument. The case there that I think is best for me is Dahlin-Jupiter, which is cited in both the circuit court's decision and my brief, and I believe my opponents have cited it as well. That was a case where the fee award had been given to the plaintiff. The plaintiff appealed. The appellate court said, no, you're not entitled to a fee. Maybe the defendant's entitled to a fee, but you're not entitled to a fee. And then the case ended. And at that point, we would have expected the litigant who was told that he was entitled to a fee to say, oh, I want to file something. Please remand the case or ask the trial judge to do that. He didn't do that. He brought a new claim. The court said the new claim is too late. I think that's very close on these facts. So if the court does get to race judicata, I would urge the court to do that. Lastly, there are subsequent cases here. The appellate court's decision in Rodriguez 1 talks about this administrative rule and suggests that maybe it's not invalid. I think it would be very strange for the state to be obligated to pay attorney's fees when a subsequent appellate court decision suggests that maybe they weren't owed. So my argument there is that even if he could bring this as a separate claim, which he can't, and even if he could get around race judicata, which he can't. Well, he can bring the claim. Whether or not he can prevail on that is another issue. Yes. We can't stop him from bringing a claim under the Declaratory Judgment Act. Even eight years down the line. Right. I mean, that's his prerogative. He wants to try it. But the fee issue requires him to go through 1055C, and it's my position he can't do that. That's your position. And that's the position I would urge you to have as well, Your Honors. I don't think I have any other. With regard to amending the complaint, that's simply a question of standing and mootness. And if there are no questions, thank you. We'd ask the Court to affirm the circuit court. Counsel, a final word. I would just note that Section 1055C says in any case, it does not say in this case that's been something that the Department has been urging. That's not the language of the section. As far as the impact of Rodriguez 1, we've been trying to figure out how Rodriguez 1 would affect this particular petition for fees. And we've put forth the two possible arguments. One is that you can't use the enabling statute to invalidate a rule where they conflict. That's clearly contrary to Supreme Court precedent when they conflict. It's invalid as a matter of law. The other is an argument that Dr. Rodriguez lacked standing. That would be the other theoretical argument. As a matter of law, Dr. Rodriguez had standing because he was being prosecuted pursuant to Section 220C. And secondly, the Department never raised that affirmative defense below. And as an affirmative defense, if you don't raise it anywhere below, it's waived. So that takes care of those two. I would also, since the issue of Rodriguez 1 was raised, I would ask this Court to look at what Rodriguez 1 said because I find a grave flaw in it. And I pointed that out. I'm an attorney, obviously. I'm a practicing physician. I used to be a Department prosecutor. You can't have the Department having power to do anything without the enabling statute being applicable. You can look at the Supreme Court decision in Knox and the other 20 Supreme Court decisions that have said it, as well as many first district decisions in other districts. All of an agency's powers come from its enabling statute. In fact, the enabling statute, which, according to Rodriguez 1, was rendered inapplicable to physicians' cases, derives its authority to implement the Medical Practice Act from subsection 15.9. So without the enabling statute being applicable, the Department has no authority to prosecute doctors. Now, the error, in my view, of the Rodriguez 1 panel was that it failed to look at the enabling statute as a whole and consider the entire statute. If one looks at section 150, in fact, it says that. We're not going to try to correct what's already been issued. Okay. Okay. All right. Thank you. Thank you. Counsel, thank you both. The case will be taken under advisement. We're going to take a short recess because we have to change panels here.